RANDOLPH LABORATORIES, Inc. v. SPE-
CIALTIES DEVELOPMENT COR-
PORATION et al.

Civ. No. 5316.

United States District Court
D. New Jersey.

Feb. 9, 1949.

See also D.C., 62 F.Supp. 987.

Pitney, Hardin, Ward & Brennan and
William H. Osborne, Jr., all of Newark,
N. J. (Ralph M. Snyder, of Chicago, Ill.,
of counsel), for plaintiff.

Kessler & Kessler and William L. Vies-
er, all of Newark, N. J., appearing specially
for Walter Kidde & Co.

Darby & Darby, of New York City,
(Floyd H. Crews, and Harvey W. Morti-
mer, both of New York City, of counsel),
appearing specially for Specialties Devel-
opment Corporation.

FAKE, Chief Judge.

This is a declaratory judgment proceed-
ing in which the plaintiff seeks to have a
certain patent, now owned by defendant,
Specialties Development Corporation, de-
clared invalid. The patent is known as Mi-
nor Patent No. 1,760,274. Plaintiff also
charges both defendants with unfair com-
petition.

Defendants have counterclaimed, charg-
ing infringement of the Minor patent, and
also infringement of Towart Reissue patent
No. 22,045, and Mapes Reissue patent No.
18,839, and Grant Design patent No. 121,-
011. Plaintiff, answering the counterclaim,
alleges invalidity of each of the four pat-
ents and denies infringement of the claims
thereof

In re the Minor Patent 1,760,274.

This patent was applied for Sep-
tember 26, 1925, and issued on May 27,
1930. It relates to carbon dioxide fire
extinguishers. There are three claims in
the patent, of which Claim 3 furnishes an
example. It reads as follows: "In a fire
extinguishing apparatus employing liquid
carbon dioxide discharged without entrain-
ment of air, the combination comprising
a container of liquid carbon dioxide, a
nozzle having a restricted discharge orifice
and in free communication with said con-

tainer so that liquid carbon dioxide only is delivered to the mouth of the nozzle and discharged therefrom, and an outwardly flaring shield of substantial length, which shield completely encloses at its smaller end the nozzle and surrounds the discharge from the nozzle."

The gist of this patent, when read with the specification and the other two claims, seems to reside in the use of a flaring cone shaped shield, or a flaring rectangular shield in connection with a discharge nozzle from which liquid carbon dioxide is ejected, under pressure, into the flaring shield. Its virtue is said to reside in the fact that the shield flaring outwardly, and made in proportion as shown in the drawings, results in a discharge of the carbon dioxide without the entrainment of air or without any substantial entrainment thereof. Thus quenching fire, in part at least, by creating an absence of sufficient oxygen upon which the fire might feed. I am convinced that this combination of elements has resulted in a better and more efficient portable fire extinguisher than any of those wherein any other method has been involved. Its virtues are attested to by public acceptance; a demonstration before the Court in a moving picture, and the financial success of those who have put it on the market. However, the vital issue here is involved in the question as to who first invented it or gave the complete idea of it to the public. In this connection it appears that Dr. Jones, who was an expert witness in this case, and a Fellow of the Mellon Institute, back in May of 1924, published an article in the Electrical World, on a dry CO₂ gas fire extinguisher, in which is shown a flaring cone shaped shield in connection with a nozzle for the use of carbon dioxide. While this article is headed "Dry CO₂ Gas" the author says, in paragraph I (Exhibit P-8): That there is placed in the cylinder "a siphon tube which delivers the carbon dioxide as a liquid through a flexible metal hose." Insofar as the flaring conical shield is concerned it reads directly on the patent in suit. Nothing is said, however, to explain the virtue of the flaring cone, except to say that the use of such a cone was made public in prior experiments with fire extinguishing units by the Bell Telephone Co. of Pennsylvania prior to the year 1924. Notwithstanding that the writer after stating that because of certain defects, found by the Bell Telephone Company, among them lack of dependability because of " * * * the tendency of the value (sic valve) used to freeze up, this type of extinguisher was never adopted generally * * *." The writer then says, "The freezing up formerly experienced was due to the vaporization of liquefied carbon dioxide in the cylinder. This cooling effect is now made available for 'freezing' the fire by placing in the cylinder a siphon tube which delivers the carbon dioxide as a liquid through a flexible metal hose * * *." Later, on March 31, 1925, some five months before Minor, Dr. Jones filed an application for the Jones Patent No. 1,644,338. This patent issued on October 4, 1927 about three years before Minor. Looking now to this Jones patent, it is found that it follows partly the teaching of Jones' prior publication. Any question bearing on differences between Jones and Minor, bearing on dry, as distinguished from liquefied carbon dioxide, is cleared up, since in explaining Jones' patent he says, "This invention relates to discharging carbon dioxide and is shown as being particularly applied to a fire extinguisher employing *liquefied carbon dioxide*." The drawings accompanying this patent bear striking resemblance to the drawings shown in the later Minor patent, and the method of operation is also substantially the same. However Minor stresses the fact that his patent covers the use of an outward flaring shield of such length "that the discharge when issuing from the shield no longer has sufficient velocity to entrain substantially any air." It seems to me that this is but to explain, with equal force, why Jones' prior flaring shield was efficient. So far as Jones is concerned it was quite immaterial that he did not stress the subject of the entrainment of air. His teaching discloses a device that actually did reduce the entrainment of air. Jones' explanation as to why he did not claim the shield in his patent is convincing. His thought was that the Bell Telephone experiments had taught its

use publicly at a prior period. Moreover, the close relationship between Jones and Minor, and the correspondence between them, lead to the conviction that Jones was prior to Minor in the inventive thought involved in the flaring shield, and that Bell Telephone preceded them both. I, therefore, conclude that the Jones Article, the Jones Patent, and the Bell prior use, requires a finding that the Minor patent is invalid. It is not necessary, therefore, to deal with any of the issues involving its infringement.

### In re the Towart Patent, Reissue Patent No. 22,045

■ Defendants charge that plaintiff infringes this patent. Plaintiff asserts its invalidity and non-infringement. Towart says, of this patent: It relates to "high pressure fluid medium containers and control valves therefor equipped with an easily manipulated finger-operated control adapted for use with fire extinguishers and other high pressure fluid medium applications."

A study of the claims of this patent, together with the drawings and specification, indicate that several elements or factors are involved in its operation, and that the core or gist of it is found in what is termed "a wholly unattached compressible discharge passage closure disc" adapted to seat and remain seated mainly by action of pressure in the valve chamber. This so called disc may float freely within its confines. It is supposed to move to and close an opening to the atmosphere upon application of pressure from a supply tank, thus sealing the contents of the supply tank. Forward of this disc, when thus seated, is a pin or rod moved by a hand trigger, and when so moved the disc leaves its seat and the contents of the tank is ejected. It is taught by this patent that when the rod or pin is withdrawn from contact with the disc, the disc will return to its seat by pressure from the tank. This I am quite unable to agree with. The testimony of the witness Yeomans convinces me on this subject that it would not. The fact that the defendant never put it to commercial use, and the fact that Exhibit D-18 shows defendants devise with a spring be-

hind the disc to force it to re-seat, indicates that this Towart patent is invalid for lack of practical virtue. In short there is no patentable invention in it, because it will not function efficiently in the absence of the spring above mentioned.

### In re Mapes Reissue Patent No. 18,839 (May 23, 1933)

■ The inventor says that this patent "relates to recoil prevention safety caps used in connection with portable high pressure gas cylinders and the like." The caps having the following characteristics: (1) It is constructed to receive a hose coupling to communicate with a gas cylinder without removing the cap; (2) Constructed with ports, or openings, so placed or balanced as to prevent recoil; (3) So constructed as to permit discharge from the cylinder and the refueling of the cylinder without removing the cap. The claims of the patent cover these factors with much repetitious recital.

The Campbell Patent (1,022,301), applied for in 1910 and issued in 1912, is cited as a prior disclosure. This patent does read on Mapes in disclosing ports, or openings, so placed as to prevent recoil exactly as in Mapes. This is admitted by Mapes in his testimony, and by defendants' counsel in their brief.

The Mapes patent is a combination patent covering the older port construction in combination with a safety cap and hose connection; which safety cap remains permanently in position, and through which the tank or high pressure cylinder may be emptied and refilled without removal of the cap. Does this combination, as an improvement on the Campbell invention, rise to the importance of patentable invention?

Prior to the coming in of this combination the problem of recall had been solved, at least as early as Campbell, but Campbell disclosed no means other than the removal of the cap to refill the cylinder or tank, and Mapes says: "As a result the safety cap is often not in place," and the set-up is liable to result in injury through misplacement or loss of the cap. The safety element here furnishes a strong ap-

peal, as does the convenience in refilling. About 21 years elapsed between the patent of Campbell and that of Mapes, during which no one thought of the improvement which Mapes finally perfected. That it was a very desirable and far reaching improvement is evidenced by its commercial success, I, therefore, conclude that to the extent that Mapes' patent covers the permanently sealed cap, through which the cylinder may be discharged and refilled, it constitutes a valid patent.

The plaintiff, Randolph, infringes this patent in the use of a channelled screw cap, P-36, the channels of which function as equivalents of the earlier Campbell ports in equalizing pressure to avoid recoil. Its connection to function with the cylinder being permanent it allows refilling and discharge without removal from its position, thus following, by equivalents, the clear teaching of Mapes.

### In re Grant Design Patent
### Design 121,011 Issued June 11, 1940

This patent covers a design for a portable fire extinguisher. The claim is brief and reads as follows: "The ornamental design for a fire extinguisher or similar article, substantially as shown." An examination of the drawings and the specification present to the eye, and to the mind, outlines of a cylindrical tank with a rounded and extended bottom; a flaring shield and pliable hose, attached to a handle with a trigger and guard on top of the tank.

The provisions of the patent law, under which this patent was issued, are found in Title 35, § 73, U.S.C.A., and so far as pertinent here they read to cover, " * * * any new, original, and ornamental design for an article of manufacture, not known or used by others * * *." Then follows this provision: "All the regulations and provisions which apply to obtaining or protecting patents for inventions or discoveries not inconsistant with the provisions of this title, shall apply to patents for design."

Does the drawing in this patent present to the eye, and the mind, a thing that is "new, original or ornamental?" Looking back over the drawings considered in the patents hereinbefore considered and which show disclosures prior to 1940, I find that Towart's original application, filed March 3, 1938, discloses a drawing so closely in line with Grant's drawings as to leave Grant with nothing original, see Figure (1). The drawing in the Minor patent produces a like result as do also the drawings in the Jones article, and later Jones patent. While it is true, that there are differences in these pictures as they meet the eye, the differences are inconsequential; and nothing in Grant, either by way of novelty or ornamentation, rises to meet the requirements of patentable invention in the field of design. The Grant patent is, therefore, invalid.

### Re Unfair Competition

The evidence on this subject is not sufficient to find that the defendants are guilty of unfair competition. It is conceded that no unfair competition existed at the time of the institution of this suit. It is argued, however, that prior unfair competition has a "carry over value." In the absence of positive evidence I am unable to find any such "carry over" effect. There is no proof that either defendant ever threatened to institute suit on any of the patents involved. If they had so threatened it would not have constituted unfair competition per se.

The ultimate and material findings of fact are as follows:

1. Plaintiff, Randolph Laboratories, Inc., hereinafter referred to as "Randolph", is an Illinois corporation, organized October 30, 1941. Defendant, Specialties Development Corporation, is a New Jersey corporation, and defendant, Walter Kidde & Company, Incorporated, is a New York corporation having a principal place of business and license to do business in New Jersey.

2. Specialties is and has been since prior to the incorporation of Randolph, the sole and exclusive owner of the four patents in suit. Specialties is a development and research corporation fully owned by Kidde. The officers of Specialties are all either officers or employees of Kidde. At least one director is common to both Specialties and Kidde and have offices in com-

mon. Specialties keeps separate books and records and files separate tax returns.

3. The Minor patent No. 1,760,274, issued May 27, 1930 and expired during the pendency of this action.

4. Dr. Charles L. Jones, a Fellow at Mellon Institute at Pittsburgh from 1922-24, while working on the use of carbon dioxide in fire extinguishers became acquainted early in 1923 with the work of the Bell Telephone Company of Pennsylvania, which had used a portable hand fire extinguisher using carbon dioxide as early as 1914, and also the work of the Chesapeake & Potomac Telephone Company in Baltimore with carbon dioxide extinguishers in 1911–1914. Both early uses of the telephone company involved the use of a flaring, conical horn and means to liberate the carbon dioxide, which latter installations were also identified as having been in use by Charles L. Matthews, the equipment engineer of the Chesapeake & Potomac Telephone Company.

5. Dr. Jones revealed to Henry Minor on April 12, 1923, the previous work of the Bell Telephone Company and his own work.

6. Randolph has been exclusively, from the date of its incorporation up to the time of the trial, and is still engaged in the manufacture and sale of portable carbon dioxide fire extinguishers, employing liquid carbon dioxide under pressures ranging from 700 to 3,000 pounds per square inch.

7. Jones made a special report to the Mellon Institute on carbon dioxide fire extinguishers dated July 21, 1923, a copy of which special report was sent to defendants' patentee Minor.

8. The disclosure by Jones to Henry Minor was about a year before Minor told Jones of his work, and Jones was earlier than Minor in the matter of disclosures.

9. In March 1924, Dr. Jones sent a manuscript of an article concerning fire extinguishers to the Electrical World, which published the article May 31, 1924, which article contained a pictorial illustration of a fire extinguisher developed by Dr. Jones and the Bell Telephone Company and a description thereof. This article was some sixteen months prior to Minor's application for the patent in suit.

10. Jones applied for and secured Letters Patent for a fire extinguisher embodying substantially the same drawings as published in the Electrical World, the application for which was filed March 21, 1925, almost six months prior to the date Minor applied for the patent in suit. The Jones patent describes and disclosed the horn but no claim was made on the horn inasmuch as Jones conceived that this was invented by Dietz or others of the Bell Telephone Company.

11. The Jones Patent discloses everything contained in the Minor patent.

12. The Towart Reissue patent No. 22,045 discloses no patentable invention over the Buckman patent No. 138,123.

13. While defendant, Walter Kidde & Company, Inc., tried to market a fire extinguisher without a spring used in connection with a valve check, the structure proved inadequate and had to be abandoned, and all commercial structures of Walter Kidde & Company, Inc. thereupon used a spring to assist in seating the valve.

14. None of the Randolph structures involves a freely floating value check as disclosed and claimed in the Towart patent.

15. None of the Randolph structures involves a wholly unattached, compressible disc or a pin slidably disposed and normally out of contact with the closure disc to unseat it.

16. None of the Randolph structures involves a safety discharge means forming a wall of the chamber adopted to provide a discharge passage.

17. None of the Randolph structures embodies the objects of the Towart patent to keep the valve open when the supply of carbon dioxide in the extinguisher is exhausted.

18. In the Randolph structures the trigger pin is always normally in contact with the closure disc.

19. The Mapes reissue patent No. 18,839 describes and claims a safety anti-recoil device which may be connected to a conduit.

20. The only prior art reference relied upon by Randolph against the Mapes patent was Campbell 1,023,021.

21. The Mapes reissue patent is not anticipated by the structure of the Campbell patent 1,023,201, which shows an anti-recoil cap which must be removed in order to connect a conduit through the valve.

22. When the Campbell safety device is removed, and the safety seal punctured, the tank is propelled with great force by the released liquid carbon dioxide, which acts on the principle of a jet engine. Much property damage and personal injury has been caused by removal of the safety devices.

23. The Campbell patent shows a device which is described by the Mapes patent as the type of device he was improving by his invention, and which was in use many years prior to the Mapes invention.

24. When the tank of Campbell is being filled with liquid carbon dioxide, the anti-recoil cap must be removed. It is this removal which created the problem solved by Mapes. Mapes for the first time taught the industry how to refill the tank with the safety cap always in place.

25. Mapes was the first inventor of the subject matter claimed in his patent.

26. Forty-six million dollars worth of sales of portable $CO_2$ fire extinguishers embodying the structure of the Mapes patent have been sold.

27. The problem solved by Mapes was not restricted to fire extinguishers, but was present in any tank of liquefied gas at high pressures.

28. No prior art was cited showing any solution to the problem solved by Mapes, although it was one of long standing. Mapes was therefore a pioneer inventor in this particular field.

29. Claims 6, 8, 9 and 16 of the Mapes patent are infringed by every Randolph model before the Court.

30. Nothing more than the skill of the ordinary workman is required to construct the device shown in the Grant Design patent No. 121,011, and the main features thereof are clearly disclosed in the Towart Reissue patent No. 22,045, originally filed March 3, 1938, which was more than two years prior to March 5, 1940, the date on which the application was made for the Grant Design patent.

31. There is nothing ornamental about the Grant Design patent No. 121,011.

32. There was no evidence of unfair competition. The allegation in the complaint that Kidde harassed competitors by stating that it controls the carbon dioxide fire extinguishing industry is not substantiated by any evidence.

33. The allegations in paragraph 5(c), (d) and (e) of the complaint were not supported by evidence, and furthermore, none of the practices complained of occurred after Randolph's incorporation.

Conclusions of Law

I conclude as matters of law:

1. The Minor patent, 1,760,274, is invalid.

2. The Towart reissue patent 22,045 is invalid.

3. Claims 6, 8, 9 and 16 of the Mapes reissue patent 18,839 are valid.

4. Claims 6, 8, 9 and 16 of the Mapes reissue patent 18,839 are infringed by the plaintiff.

5. The Grant Design patent 121,011 is invalid.

6. Defendants, Specialties Development and Walter Kidde, are not guilty of unfair competition.