## RANDOLPH LABORATORIES, INC., v. SPECIALTIES DEVELOPMENT CORPORATION et al.

### Appeal of RANDOLPH LABORATORIES, Inc.

### Appeal of SPECIALTIES DEVELOPMENT CORPORATION.

Nos. 9930, 9982.

United States Court of Appeals Third Circuit.

Argued Nov. 22, 1949.

Decided Dec. 21, 1949.

Rehearing Denied Jan. 10, 1950.

478

Ralph M. Snyder, Chicago, Ill. (Pitney, Hardin & Ward, Newark, N. J., on the brief), for plaintiff.

Floyd H. Crews, New York City (Darby & Darby and Harvey W. Mortimer, New York City, J. Wm. Carson, Belleville, N. J., and Kessler & Kessler, Newark, N. J., on the brief), for defendants.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Randolph Laboratories, Inc., brought suit in the District Court for the District of New Jersey for a declaratory judgment against the defendants, Specialties Development Corporation and Walter Kidde & Company, Incorporated, that the Minor Patent No. 1,760,274 which is owned by Specialties is invalid and not infringed by the plaintiff's fire extinguishers. Specialties is a wholly owned subsidiary of Kidde. Both defendants filed answers and Specialties filed a counterclaim seeking an injunction restraining the plaintiff from infringing the Minor Patent, the Mapes Reissue Patent No. 18,839, the Towart Reissue Patent No. 22,045 and the Grant Design Patent No. D-121,011, all owned by Specialties, and an accounting for profits and damages. After a trial the district court held invalid the Minor Patent, claims 3 and 8 of the Towart Reissue Patent and the Grant Design Patent. The court held that claims 6, 8, 9 and 16 of the Mapes Reissue Patent were valid and infringed. D.C., 82 F.Supp. 316. It thereupon entered an appropriate judgment from which both the plaintiff and Specialties have appealed to this court. The appeals have been heard together and bring before us for review the action of the district court with respect to each of the four patents in suit.

The patents all relate to carbon dioxide fire extinguishers. The principal controversy centers around the conclusion of the district court that the Minor Patent No. 1,760,274 is invalid. Claim 2 of that patent is as follows: "In a fire extinguishing apparatus employing a liquid which in use is converted into gaseous and solid form and which is most effective as a fire extinguishing medium when free of air, the combination including a container of the liquid, a nozzle having a restricted discharge orifice and in free communication with the container for discharging the liquid and an outwardly flaring shield completely enclosing at its smaller end said nozzle into which the nozzle discharges, said shield being of such length that the discharge when issuing from the shield no longer has sufficient velocity to entrain substantially any air."

The liquid commercially used in a fire extinguisher of this type is carbon dioxide under high pressure. When released through the nozzle it changes partly into gaseous carbon dioxide and partly into solid carbon dioxide in the form of a fine white snow. The stream of gas and snow when directed upon a fire tends to extinguish it by depriving it of the oxygen necessary for combustion. But since the gas and snow leave the nozzle at a high velocity, due to the pressure of the liquid carbon dioxide and its expansion into gaseous form at the point of discharge, a large quantity of the surrounding air is sucked into the resulting blast and the oxygen thus entrained tends to offset the effect of the carbon dioxide and to fan the fire instead of quenching it. The principal object of the Minor invention was to minimize this entrainment of air by projecting the blast of carbon dioxide gas and snow through an outwardly flaring shield or horn attached at its smaller end to the discharge orifice of the extinguisher. The use of such a horn substantially prevents the entrainment of air by the blast of gas and snow as it leaves the orifice and passes through the horn and has proved highly effective in practice. Indeed it seems undisputed that the adoption of this device has made the use of portable liquid carbon dioxide fire extinguishers practicable and it has had very wide commercial success. It may, therefore, be conceded that the combination of the patent involves invention and that the patent is valid if Minor was the discoverer. The plaintiff's contention is

that Minor did not discover the utility of a flaring horn in this connection, the district court so found, and this, therefore, is the vital question raised with respect to this patent.

The district court made the following findings of fact with respect to this question:

"4. Dr. Charles L. Jones, a Fellow at Mellon Institute at Pittsburgh from 1922-24, while working on the use of carbon dioxide in fire extinguishers became acquainted early in 1923 with the work of the Bell Telephone Company of Pennsylvania, which had used a portable hand fire extinguisher using carbon dioxide as early as 1914, and also the work of the Chesapeake & Potomac Telephone Company in Baltimore with carbon dioxide extinguishers in 1911-1914. Both early uses of the telephone company involved the use of a flaring, conical horn and means to liberate the carbon dioxide, which latter installations were also identified as having been in use by Charles L. Matthews, the equipment engineer of the Chesapeake & Potomac Telephone Company.

"5. Dr. Jones revealed to Henry Minor on April 12, 1923, the previous work of the Bell Telephone Company and his own work.

\*  \*  \*  \*  \*  \*

"7. Jones made a special report to the Mellon Institute on carbon dioxide fire extinguishers dated July 21, 1923, a copy of which special report was sent to defendants' patentee Minor.

"8. The disclosure by Jones to Henry Minor was about a year before Minor told Jones of his work, and Jones was earlier than Minor in the matter of disclosures.

"9. In March 1924, Dr. Jones sent a manuscript of an article concerning fire extinguishers to the Electrical World, which published the article May 31, 1924, which article contained a pictorial illustration of a fire extinguisher developed by Dr. Jones and the Bell Telephone Company and a description thereof. This article was some sixteen months prior to Minor's application for the patent in suit.

"10. Jones applied for and secured Letters Patent for a fire extinguisher embodying substantially the same drawings as published in the Electrical World, the application for which was filed March 21, 1925, almost six months prior to the date Minor applied for the patent in suit. The Jones patent describes and disclosed the horn but no claim was made on the horn inasmuch as Jones conceived that this was invented by Dietz or others of the Bell Telephone Company.

"11. The Jones Patent discloses everything contained in the Minor Patent."

We cannot say that the foregoing findings of fact are clearly erroneous. On the contrary, we agree with the district court that they are supported by the weight of the evidence. There is ample evidence that the Bell Telephone Company of Pennsylvania, then operating the Chesapeake & Potomac Telephone Company in Baltimore, used a system of liquid carbon dioxide fire extinguishers having flaring horn shaped nozzles in its telephone exchanges as early as 1911. Early in 1923 engineers of the Bell Telephone Company were studying the problem. They conferred with Dr. Charles L. Jones, a Fellow of the Mellon Institute of Industrial Research who was working on a project to develop new uses for liquefied carbon dioxide, and gave him their data and experience. At a conference between them on April 12, 1923 it was decided to compare range and effectiveness on experimental fires of convergent and divergent nozzles. One of the telephone company engineers was instructed to prepare drawings of flaring horn shaped nozzles. These drawings were completed on June 20, 1923. In July, 1923 Dr. Jones made and used a horn in connection with one of the telephone company hand fire extinguishers and realized at once that it solved the problem of air entrainment. All of this was disclosed to Minor, the subsequent patentee. In March, 1924 Kidde made and sold to the Bell Telephone Company portable fire extinguishers embodying horn shaped nozzles manufactured in accordance with the Bell Telephone Company's specifications. On May 31, 1924 the Electrical World published an article by Dr. Jones which described and included pictorial representations of these extin-

guishers which were then being used by the Bell Telephone Company.

In prosecuting his application in the Patent Office Minor filed an affidavit that he conceived the idea of his patent about December 1, 1922, that he disclosed it to others about January 1, 1923, that the first written description was made about January 25, 1923, and that he reduced it to practice about September 1, 1923. He reiterated these statements in his testimony. There is support in the evidence, however, for concluding that what Minor conceived was the idea of using a conical spray of water or carbon tetrachloride as a sheath or shield for the discharge of carbon dioxide gas to prevent the dissemination of the carbon dioxide and itself to assist in extinguishing the fire. Indeed he stated in a letter of February 3, 1925 to his counsel that this was his "first thought". It was this, and this only, that he disclosed to Dr. Jones in 1923 and although in the letter of February 3, 1925 to his counsel he said, "It was, of course, apparent to me that the same effect could be obtained by substituting therefor a cone composed of fibre or cardboard", we think that it may fairly be inferred from all the evidence that this did not in fact become apparent to him until after Dr. Jones had disclosed it to him. Moreover the written description which Minor claims was made about January 25, 1923, and which appears in a letter of that date addressed to him by his patent counsel, may fairly be interpreted as referring only to his "first thought" of a sheath of water or carbon tetrachloride.

■ Dr. Jones, who was thoroughly familiar with the art and who filed an application of his own for a patent on the same extinguisher six months before Minor, regarded the use of the flaring horn as a contribution of the prior art and, therefore, did not claim it as new. Since Minor had made no disclosure to Dr. Jones, the knowledge of its prior use must have come to him from the Bell Telephone Company's engineers with whom he had conferred and not from

Minor. This alone is persuasive evidence of the fact that the idea antedated 1923 and did not originate with Minor. We conclude that the district court rightly held that the Minor Patent is invalid because Minor was not the inventor of the method and device which he claims therein as his own conception.

We turn then to consider the validity of the Mapes Reissue Patent No. 18,839. It relates to a recoil prevention safety cap used in connection with a portable high pressure gas cylinder, such as a carbon dioxide fire extinguisher. The findings of fact of the district court with respect to this patent are as follows:

"19. The Mapes reissue patent No. 18,-839 describes and claims a safety anti-recoil device which may be connected to a conduit.

"20. The only prior art reference relied upon by Randolph against the Mapes patent was Campbell 1,023,021.[1]

"21. The Mapes reissue patent is not anticipated by the structure of the Campbell patent 1,023,201,[1] which shows an anti-recoil cap which must be removed in order to connect a conduit through the valve.

"22. When the Campbell safety device is removed, and the safety seal punctured, the tank is propelled with great force by the released liquid carbon dioxide, which acts on the principle of a jet engine. Much property damage and personal injury has been caused by removal of the safety devices.

"23. The Campbell patent shows a device which is described by the Mapes patent as the type of device he was improving by his invention, and which was in use many years prior to the Mapes invention.

"24. When the tank of Campbell is being filled with liquid carbon dioxide, the anti-recoil cap must be removed. It is this removal which created the problem solved by Mapes. Mapes for the first time taught the industry how to refill the tank with the safety cap always in place.

"25. Mapes was the first inventor of the subject matter claimed in his patent.

1. These are obviously intended to be references to Patent No. 1,022,301 issued to R. H. Campbell.

"26. Forty-six million dollars worth of sales of portable $CO_2$ fire extinguishers embodying the structure of the Mapes patent have been sold.

"27. The problem solved by Mapes was not restricted to fire extinguishers, but was present in any tank of liquefied gas at high pressures.

"28. No prior art was cited showing any solution to the problem solved by Mapes, although it was one of long standing. Mapes was therefore a pioneer inventor in this particular field."

■ We think that the foregoing findings have adequate support in the evidence. The problem which the patent solved arose because of the tremendous pressures involved in these cylinders which will cause a recoil if the gas is permitted to escape. In such a situation the continuous pressure of the escaping gas in one direction drives the cylinder in the opposite direction with serious danger to person and property. Campbell devised a safety cap with oppositely disposed ports on its sides through which the gas could escape, so that the recoil from each port is equal and opposite and therefore is balanced out. The difficulty with this was that the safety cap had to be removed when filling the cylinder and was frequently not replaced after the filling was over. Mapes' contribution was to show that such a safety device could be so placed that a coupling to the intake or discharge pipe could be affixed to it or placed over it and the cylinder filled or discharged through it without it being removed. This was a great advantage for it made it possible to keep the safety device in place at all times and thus make certain that it would be in place when needed. The plaintiff urges, nonetheless, that it did not involve patentable invention over the prior art. The Mapes device has had great commercial success, however, and while the question is close we cannot say that the district court erred in finding invention in the Mapes device and in holding the patent valid.

The district court found that claims 6, 8, 9 and 16 of the Mapes Patent are infringed by every model of the plaintiff before the court. We think that this finding must be qualified. Claims 6, 8 and 9 call for a safety device to which the coupling of the intake or discharge pipe is screwed or otherwise affixed. Some, at least, of the plaintiff's alleged infringing devices are not of this type in that the coupling is placed over the safety device, being affixed to the member into which that device is screwed, instead of being screwed to the device itself. Claim 16 of the patent, however, reads directly on these latter devices. The judgment of the district court must, therefore, be modified to adjudge that certain of the plaintiff's models infringe claims 6, 8 and 9 and others infringe claim 16.

■ The two remaining patents, the Towart Reissue Patent No. 22,045 and the Grant Design Patent No. D-121,011, require little discussion. The district court held them both to be invalid and its action was so clearly right for the reasons stated in the opinion filed by Chief Judge Fake that we need add nothing to what he has said with respect thereto. We are equally clear that the district court did not err in its finding that there was no evidence of unfair competition on the part of the defendants.

The judgment of the district court will be modified to the extent indicated in this opinion and as so modified will be affirmed.